Rosa Pérez Casalduc Etc., Plaintiffs, Cross-defendants and Appellees, *v.* Succession of Jaime Oliver Mayol, Etc., Defendants, Cross-complainants and Appellants.

No. 7484.   Argued May 24, 1938.—Decided June 1, 1939.

*M. Marcos Morales* for appellants.   *E. Pérez Casalduc* and *M. García González* for appellees.

Mr. Justice Hutchison delivered the opinion of the Court.

Defendants appeal from an adverse judgment in a revendicatory action.

In January, 1899, Eusebio Pérez Castillo mortgaged a coffee grove, known as Gripiñas, to secure the payment of 40,207.67 provincial pesos. This was said to be the balance due Jaime Oliver on a liquidated account. Pérez Castillo died in July. One of his eight children, Eduardo Pérez Rivera, died in September. Plaintiffs were the minor children of Eduardo Pérez. In January, 1900, a family council was constituted. A tutor and a pro-tutor were named.

I

Monserrate Rivera, widow of Pérez Castillo, died in June, 1900. Eusebio Pérez Castillo and Monserrate Rivera, in their respectives wills, named executors and commissioners.

In October, 1900, the adult heirs and the tutor, the latter acting on behalf of the minor children, acknowledged an indebtedness to Oliver of $5,126.82. To secure its payment they executed a second mortgage on the Gripiñas grove. A *resolución* adopted by the family council had conferred general powers upon the tutor, but did not specifically authorize him to join in the execution of this mortgage. Contrary to the statement in the mortgage as to the amount of the debt therein acknowledge, Jaime Oliver, by his attorney-in-fact, Francisco Oliver, in a private document of even date acknowledged receipt of 2,225 provincial pesos as the amount due from the Pérez heirs on a current account said to have been paid by the mortgage.

At the same time the adult heirs and the tutor, under the general powers conferred upon him but without specific authority, assigned and transferred to Jaime Oliver in a notarial instrument the entire 1901 coffee crop of the Gripiñas grove. The proceeds, after deducting certain expenses, were to be credited on account of the indebtedness due him as set forth in the sixth clause of the instrument.

In February, 1901, Oliver brought suit in the Federal Court against the Pérez heirs for a foreclosure of the mortgage on the Gripiñas grove, amounting to $24,124.60, and for the foreclosure of a mortgage on other properties amounting to $22,074.60, both of which had been executed by Eusebio Pérez. This suit was dismissed some months later.

In May, 1901, the adult heirs stated in a notarial instrument that the total indebtedness due Oliver amounted to $60,000; that of this amount, distributed among the heirs, the adult heirs were responsible for $52,500 or $7,500 each, and the minor heirs for the remaining $7,500. In the same instrument the adult heirs conveyed to Oliver their undivided seven-eighths interest in the grove in payment of

the $52,500 as their share of the indebtedness, on condition that such payment should be credited as follows: $16,624.60 on the first mortgage on the Gripiñas grove for $24,124.60; $5,126.82 as payment in full of the second mortgage on the same property; $22,074.60, as payment in full of a mortgage on two other properties, Yunes and Limón, and the remaining $8,673.98 to cover accrued interest on the three mortgages, costs incurred by Oliver, and the balance due him as the result of his administration of the Gripiñas grove. Oliver agreed among other thing, that he would not claim from the minor heirs more than the remaining $7,500 due on the first mortgage, without interest, provided the debt should be paid within two months. It did not appear from the instrument that the whole of the property had been appraised by experts with the intervention of the minor heirs. The instrument contained a later clause wherein it was stated that the tutor (who had not been previously mentioned as a party to the instrument) joined therein. Invoking the powers conferred upon him by the family council, and in order to avoid damages, and in order to facilitate the settlement of a suit between Oliver and the minors, the tutor agreed, on behalf of the minors, that their undivided one-eighth interest in the Gripiñas grove should stand as security for the $7,500, which was still owing to Oliver. A paragraph of the general power as to compromise or friendly settlements, but without specific authorization of the action taken by the tutor, was inserted. There was nothing to show any judicial authorization or approval of the agreement as far as the minors were concerned.

In an instrument of even date, Jaime Oliver by his son and attorney-in-fact, Francisco Oliver, obligated himself to executed in favor of the Pérez heirs, or of the person or persons whom they might designate, the instrument or intruments necessary to transfer to them three mortgage credits (the first for 3,000 provincial pesos, the second for 5,000 provincial pesos and the third for $1,400 in American

4

money) and to convey to them a rural property of 55 or 57 cuerdas in the Barrio Jayuya Arriba. In this instrument Oliver acknowledged previous payment by the heirs of $1,500 in American gold as the purchase price of the rural property, and the previous payment by the heirs of the full amount of the three mortgages. He stated that his obligation arose out of the compromise made that day with the Pérez heirs; but that the necessary instruments could not be immediately executed. In this instrument—no mention of which was made in the instrument whereby the seven-eighths of the Gripiñas grove was awarded to Oliver, and the debt of $60,000 was acknowledged—the minors did not appear as participating therein or accepting their portion of the mortgage credits, or of the property described therein which Oliver obligated himself to transfer for a price already received.

In an instrument of June 13, 1901, in which the tutor did not appear, Julio Grau (as representative of the adult heirs) and Jaime Oliver (represented by Juan Esteva) stated that there was an error in the liquidation of the account, as the amount of the indebtedness was $70,000 instead of $60,000, and hence, the award of the undivided interests in the Gripiñas grove made to Oliver in the instruments of May 10, 1901, should be deemed to have been made for the said amount.

From an instrument of June 15, 1901, it appears that the tutor, in the name of plaintiffs, awarded to Jaime Oliver (represented by his attorney-in-fact, Juan Esteva) the one-eighth undivided interest which had been reserved to the minors in the instrument of May 10, 1901, upon which one-eighth interest the tutor had recognized a mortgage in favor of Oliver. This award was said to have been made after an auction sale of the said undivided interest, authorized and held by the family council según actas relacionadas. It was stated that Oliver had been the only bidder and had offered $7,500 (the amount of the mortgage) to be credited on the

account in his favor as a balance due on the debt of the minors.

By an instrument of October 8, 1902, the adult heirs and the tutor stated that—after a minute examination in order to ascertain whether the credits and the land, which Oliver in the instrument of May 10, 1901 had obligated himself to transfer, belonged to the Pérez heirs or to other persons—they had become convinced that the land belonged to Amador Dávila y Villanueva, and the three mortgage credits to Eduardo Artáu, instead of to the heirs. The adult heirs and the tutor then authorized Dávila and Artáu to demand from Jaime Oliver the said property and authorized Oliver to execute in favor of Dávila and Artáu a deed to the said land and to the mortgage credicts.

By an instrument of February 20, 1903, Oliver transferred to Eduardo Artáu two of the mortgage credits to the full amount ($3,200) and part of the other credit ($2,300) retaining $700 without explanation and without the appearance or consent of either the adult or the minor heirs.

In an instrument of July 28, 1910, Eduardo Artáu, as an act of liberality and in demonstration of his affection for the minors, conveyed to them two houses in the town of Utuado, valued at $2,500. In that instrument, the tutor appeared for the minors. In another instrument of December 13, 1912, Artáu and the tutor referred to an agreement said to have been reached in July, 1910, as to the sale of the two houses and stated that the purchase price had been paid at that time. Artáu thereupon conveyed to the minors the two houses in consideration of the sum said to have been paid in 1910.

Oliver died in Spain, January 14, 1919, leaving a will. In a division of his property, the Gripiñas grove was awarded to his four children: Francisco, Margarita, Manuela and Antonia Oliver Couveljé, defendants herein in the following proportions: two-fifths to the first and one-fifth to each of the others.

6

In a sworn statement made before a notary, September 26, 1926, Eduardo Artáu stated, in substance, that he had received the mortgage credits from Oliver, pursuant to an understanding with the Pérez heirs that the should liquidate the same, collect a certain amount owing to his sister and deliver the balance (about $4,000) to the minors, represented by their tutor; that he had delivered part in cash, $1,200 in a note which he paid in 1913, and the balance, by an award to the said minors of two houses which had belonged to him.

By an instrument of March 20, 1902, Eduardo Artáu had accepted from the tutor of the said minors an assignment of rights in full payment of four notes which had been endorsed to him by the payees, one of whom was his sister.

Other documents, of statements of accounts (borderós) and receipts, relative to essential facts, were admitted in evidence. There was also testimony as to the averments of the complaint, answer and cross-complaint, expert testimony as to the value of the property, cost of cultivation and the amount produced during the periods involved.

The foregoing statement of facts is taken from the findings contained in a sixty-five page "Opinion and Judgment" wherein the district judge held that, as far as the minors were concerned, the agreement of May 10, 1901—which he regarded as a division of the Gripiñas property—and the agreement of June 15, 1901, were absolute nullities. His reasons were: that there had been no testamentary proceeding or liquidation of the estate prior to the authorization by the family council of an award of property belonging to the minor heirs and prior to the award of such property by the tutor; that even if the agreements were not absolutely void for want of a previous testamentary proceeding they were absolutely void because of the liquidation of indebtedness and the partition and award of property without express consent of the tutor and without specific authorization for

the making of such an agreement and without judicial approval of the partition, and because the agreement rested upon false and simulated suppositions indicative of an understanding between the adult heirs, the tutor and some of the members of the family council and Oliver, for the purpose of facilitating Olivers' acquisition of the Gripiñas property in manifest prejudice to the interests of the minor heirs.

The deed of May 10, 1901, was not an instrument of partition, it was a conveyance of an undivided interest, or of seven undivided interests in the Gripiñas property. There was no division of that property nor of the estate.

The tutor had been authorized by the family council to effect compromises and friendly settlements with any or all of the creditors of the deceased Pérez Castillo and Eduardo Pérez Rivera; to stipulate as to installments, interest and extensions of time; to sign promissory notes and obligations of all kinds, including mortgages upon properties of every kind left by Pérez Castillo and by his wife, Monserrate Rivera and by the spouses Eduardo Pérez Rivera and Rosa Casalduc Roig. It may he conceded that the tutor should have obtained a more specific authorization before he consented to the liquidation and apportionment of indebtedness, and a cancellation of the mortgages on the Gripiñas grove and other properties, as far as the undivided interests conveyed by the adult heirs were concerned, and before he agreed that the undivided interest of the minor heirs. in the Gripiñas grove—already subject to mortgages previously executed—should stand as sole security for the $7,500. It may be conceded that, for want of more specific authority, the minor heirs were not bound by the terms of the contract at the time of its execution. It does not follow that the contract was an absolute nullity. It contained a recital to the effect that the tutor was at the time taking the proper steps with a view to the payment of the $7,500 by the minor heirs.

From the instrument of June 15, it appears that on May 7, three days before execution of the conveyance by the adult heirs, a family council with knowledge of the agreement already reached by the adult heirs and Oliver, had authorized a sale of the one-eighth undivided interest of the minors at public auction for a minimum price of $7,500. From that instrument it also appears that the family council, in view of the pending foreclosure proceeding in the Federal Court, and in view of the agreement already reached between the adult heirs and Oliver, decided that a sale for not less than $7,500 would be to the advantage of the minor heirs. From that instrument, it appears that Oliver had been the only bidder at the public sale, had offered for the undivided interest of the minors $7,500 as the balance due on his mortgage and had agreed to accept the undivided interest in full payment of such balance. The family council after further deliberation and after hearing the pro-tutor, who considered a sale upon the terms indicated advantageous to the minors, unanimously approved the sale to Oliver for the amount and subject to the conditions specified in his offer; whereupon it authorized and directed the tutor to execute a proper deed of conveyance or award upon the condition imposed by the bidder. The instrument of June 15, executed by the tutor, was a deed of purchase and sale or a *dation en paiement* for the amount of Oliver's bid, $7,500, and in full payment of the balance due on the mortgage.

A previous testamentary proceeding, liquidation and partition of the estate, would have been preferable, more regular, and more conducive to the best interest of the minors, perhaps, if Oliver could have been induced to hold in abeyance the suit for foreclosure of the mortgage. It is not probable that the minors would have derived any benefit from a protracted struggle in the federal courts. Neither a testamentary proceeding, nor a liquidation and distribution of the estate, nor a division of the Gripiñas

property was an indispensable prerequisite to the public sale authorized, effected and approved by the family council, or to the execution by the tutor of a deed of conveyance as authorized and directed by the family council. For the purposes of this opinion, we assume that in the event of a subsequent testamentary proceeding or any other proceeding for the liquidation, partition or distribution of the estate, including the Gripiñas property, Oliver would have stood more or less in the shoes of his vendors. This, however, is a question that has not been discussed in the briefs and we need not speculate further as to what might or might not have been done in any subsequent proceeding. The total amount of indebtedness might have been much less than $60.000. The district judge so found. The Gripiñas property might have been worth from $80,000 to $100,000 at the time, as estimated by the district judge. It does not follow that the transaction as a whole was either a simulated transaction or void for want of any consideration. It might have been tainted with fraud as found by the district judge. It was not absolutely void.

The brief for appellees has failed to satisfy us that the conveyance of June 15 and the compromise and settlement of May 10, as far as the minors were concerned, were void on grounds held by the district judge to be mere irregularities.

The youngest of the minor heirs was thirty years of age when the complaint was filed. The contention of defendants that the action was barred because it had not been brought within four years after majority, should have been sustained.

The judgment appealed from must be reversed and the action dismissed.

Mr. Justice De Jesús took no part in the decision of this case.